## Roswell P. Crafts *vs.* Chester Crafts & others

ine report of an auditor, to whom a suit in equity is referred without any special order or agreement as to the effect of his report, is *prima facie* evidence, but not conclusive.

A mortgage described the mortgage debt as " two promissory notes, bearing even date herewith, for the sum of five hundred dollars, one payable in 1852 and the other in 1853, with interest to be paid yearly;" and the notes referred to, being produced and identified, were for five hundred dollars each. *Held*, that the notes were competent evidence to explain the mortgage, as against the mortgagor, or one who purchased the equity of redemption with notice that the mortgage was intended to secure both notes.

One tenant in common, of real estate conveyed to two, paid his half of the purchase money, and joined with his cotenant in a note and mortgage to secure the payment of the other half, and afterwards released his interest in the land to the mortgagee. *Held*, that his cotenant, or one claiming under him with notice of the facts, could not redeem the estate without paying the whole amount of the mortgage.

Two tenants in common of land made a joint mortgage thereof, and one of them afterwards released his interest to the mortgagee, who made improvements upon part of the land with the knowledge of the other mortgagor. On a bill in equity to redeem, by the assignee of the latter, the court ordered that portion to be assigned to him on which no improvements had been made.

BILL IN EQUITY to redeem land in Easthampton from a mortgage. At the hearing before *Dewey*, J., the defendants introduced the report of an auditor, to whom the case had been referred at a previous term without any special order of the court or agreement of parties as to the effect of his report. The judge declined to hear evidence offered by the plaintiff to control the auditor's report, and reserved this and all other questions of law arising in the case for the consideration of the full court, who, after argument at this term, held that said report was *prima facie,* but not conclusive evidence.

Another hearing was then had before the same judge, and

reported to the full court at the ensuing term at Springfield. The conclusions of fact at which the court arrived upon the evidence are stated in their opinion.

*S. T. Spaulding*, for the plaintiff, cited Broom's Max. (2d ed.) 712 *& seq.;* 1 Greenl. Ev. §§ 297–301; 2 Story on Eq. § 1016 *b, & note; Spring* v. *Haines*, 21 Maine, 126; *Borst* v. *Boyd*, 3 Sandf. Ch. 501; *Richmond Trading & Manuf. Co.* v. *Farquar*, 8 Blackf. 89; Rev. Sts. *c.* 59, §§ 28–30; *c.* 74, § 1, *cl.* 4; *c.* 107, §§ 13–16, 18, 19, 29; *Adams* v. *Brown*, 7 Cush. 223; *Wyman* v. *Hooper*, 2 Gray, 141; *Grover* v. *Thatcher*, 4 Gray, 526.

*R. A. Chapman & C. Delano*, for the defendants, cited Rev. Sts. *c.* 107, § 29; *Clarke* v. *Grant*, 14 Ves. 519; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Storrs* v. *Barker*, 6 Johns. Ch. 166; 1 Story on Eq. §§ 39, 388–391; 2 Story on Eq. §§ 742, 750, 781, 877; Drewry on Injunctions, *c.* 2, § 11; Fonbl. Eq. *c.* 1, § 7.

DEWEY, J. The plaintiff in this bill is the undisputed owner of a moiety of an equity of redemption in certain lands mortgaged by Joseph P. Snow and George C. Clapp to the defendants, by their mortgage executed on the 19th of July 1849. This mortgage was made to secure the payment of the sum of one thousand dollars, being one half of the consideration of a conveyance made by the mortgagees to the mortgagors of the same land in fee. Clapp on the 25th of September 1851, by his deed of release and quitclaim, conveyed to the mortgagees all his interest in the premises; and Snow on the 9th of July 1853 released and quitclaimed all his interest in the premises to the plaintiff; and it is through this title that the plaintiff seeks to support this bill. The inquiry is, upon what terms and conditions he may redeem the estate?

The case comes before us upon the report of an auditor, and such additional testimony as was subsequently taken upon the order of the court, and which is to be considered in connection with the report of the auditor, it not being shown by the record that the parties had agreed that the auditor's report should be taken and used as a statement of facts.

1. The first question raised is as to the amount secured by

this mortgage. Taking the description contained in the mort-gage deed alone, it is thus: " Whereas the said Joseph P. Snow and George C. Clapp have made and executed two promissory notes, bearing even date herewith, for the sum of five hundred dollars, one payable in 1852 and the other in 1853, with in-terest to be paid yearly." It is contended, on the part of the plaintiff, that the entire sum or amount of the two notes is only five hundred dollars, and that the mortgage may be re-deemed by paying that sum with the accruing interest.

That such was not the intention of the parties is quite cer-tain, and may, we think, be considered as properly established by the facts shown in the case. The notes referred to are pro duced, and their identity shown by uncontroverted evidence, including that of Snow, one of the mortgagees. They are for the sum of five hundred dollars each. Snow testifies that he informed the plaintiff, before he purchased his right in equity, that these notes were due and unpaid. The plaintiff admits, in his own testimony, that Snow told him there were two notes of five hundred dollars each included in the mortgage.

The evidence offered upon this point is not incompetent as contradictory to the express language of the mortgage, but is well authorized to render the same more certain; the notes be-ing referred to in the mortgage, and it being fully shown that all parties — Snow in' the first instance, and the plaintiff before making his purchase — knew the actual amount of the notes referred to in the mortgage and secured thereby.

2. It was next insisted that the two notes, being signed by the two purchasers and mortgagees, Snow and Clapp, and the defendants having taken a release and quitclaim from Clapp, the plaintiff could only be required to pay one half of the amount of the debt secured by the mortgage, to entitle him to redeem. But this position cannot be maintained, inasmuch as the defendants, having a prior title as mortgagees to hold the premises until the sum secured by the mortgage is paid, may insist upon such prior title, and decline aiding in the redemp-tion, leaving the tenant of a moiety of the redemption to avail himself of his legal rights; and also for the further reason, that

it is shown in the case that these two notes were wholly for the sole debt of Snow, as between Snow and Clapp. Clapp had paid or secured his part of the purchase money, irrespective of the mortgages, and, as to that, he was the mere surety of Snow. We think that from the evidence in the case it sufficiently appears that the plaintiff was fully apprised of this fact, and must have understood that the notes were given on Snow's account, and for his portion of the purchase money. Such being the case, the plaintiff, holding under Snow, should not be permitted to redeem without paying the entire indebtedness of Snow, secured by the mortgage. The mortgagor, or his assignee, in case there is one, must pay the whole liability charged upon the mortgage, before he will be allowed to redeem, unless he can show that equity requires the other party to abate some portion thereof, by reason of his liability to contribute to the payment of the same.

3. The further question in the case arises upon the peculiar facts of this case, as to the nature of the title of the respective parties, and the large expenditures that have been made by the defendants in erecting buildings and making other improvements upon a portion of the mortgaged premises. The plaintiff asks for a naked decree, permitting him to redeem the mortgage, and to hold his interest in the premises in its present improved state, without contributing to the expenditures therefor. As between mortgagee and mortgagor, the rule undoubtedly is that expenditures only of a very limited character, and those apparently required to preserve the property and continue its productiveness, are to be made by the mortgagee at the cost and charges of the mortgagor. But this case is supposed to differ from ordinary cases, the equity of redemption having been originally held by the plaintiff's grantors, Snow and Clapp, as tenants in common, and the defendants having, before the making of the expenditures, acquired Clapp's interest in the equity of redemption. The defendants had the older and better title as mortgagees of the entire premises, and also the subsequently acquired title of a moiety of the interest held by the mortgagors.

But the defendants more particularly rely upon the circum-

stances attending these expenditures, as showing the same to have been made with the concurrence of Snow to this extent, that the money to be expended thereon was to be advanced by the defendants, and the remuneration therefor to be obtained out of the proceeds of the sales of the property thus improved, and not to be a personal charge on the mortgagor Snow. Upon the whole evidence before us, we think it sufficiently appears that this was so understood and acted upon by the parties then in interest. Snow was at this time the exclusive owner of the interest in the estate, now claimed by the plaintiff. The defendants had made an entry for the foreclosure of this mortgage on the 23d of September 1851. The plaintiff acquired the title of Snow on the 9th of July 1853, and knew, or had full opportunity to know, as to those expenditures, before he made his purchase; all the houses having been erected on the premises before the date of the conveyance to the plaintiff by Snow. The auditor finds further that upon the evidence before him he was satisfied that Snow communicated to the plaintiff the facts as to the expenditures by the mortgagees, and that Snow had no claim to any benefit from the buildings thus erected by the mortgagees, unless he should choose to contribute his share towards paying for them. The plaintiff therefore has not any greater rights than Snow, in reference to the redemption of this property from the mortgage held by the defendants. The question therefore recurs, Had Snow the right to redeem the premises mortgaged, without contributing his share to the payment of these expenditures, or some limitation which may reasonably secure the defendants for the expenditures made by them? In the opinion of the court, upon the present application to redeem this mortgage, it is proper to impose such condition in granting the same; as equity and justice may require as between these parties.

If the plaintiff had elected to contribute to the payment of the expenditures to the extent of his interest in the lands, that might be a suitable mode to effect this object. But this not being desired by him, and it appearing to the court that a partition of the premises may be made, giving to the plain-

tiff his moiety in that portion of the lands upon which no buildings have been erected by the defendants, the right to redeem will be made subject to a provision for making such partition, and assigning to the plaintiff his portion of the estate out of such part, and requiring the parties respectively to execute all proper deeds to each other to carry such partition into effect. *Decree accordingly.*